**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

Rebecca Valarie C.,[1]

|  | | |
|---|---|---|
| | Plaintiff, | |
| v. | | 5:25-CV-862 |
| | | (AJB/MJK) |

Frank Bisignano,
Commissioner of Social Security

Defendant.

Justin M. Goldstein, Esq., for Plaintiff
Kathryn Pollack Esq., Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Anthony J. Brindisi, U.S. District Judge:

**REPORT-RECOMMENDATION**

Rebecca C. brought this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Social Security Commissioner's final decision denying her application for benefits. (Dkt. 1.). Rebecca C. did not consent to the jurisdiction of a Magistrate Judge. (Dkt. 4). So, the Honorable Anthony J. Brindisi, U.S. District Judge, referred this matter to the Court for Report and Recommendation. Both

---

[1] This Report-Recommendation will identify the plaintiff using only her first name and last initial to protect her privacy.

1

parties filed briefs (Dkts. 15, 23, 26) which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

## I.     PROCEDURAL HISTORY

On June 16, 2021, Rebecca C. filed an application for Title XVI supplemental social security income benefits, alleging disability beginning February 14, 2018. (T. 126). The Social Security Administration denied the claim initially on November 12, 2021, and again upon reconsideration on March 25, 2022. (*Id.*). Rebecca C. requested a hearing five days later. (*Id.*) On December 22, 2022, Administrative Law Judge ("ALJ") Gretchen Greisler held a hearing. (T. 35-58). At the hearing, Matthew Nutting represented Rebecca C. (T. 37). Both Rebecca C. and a Vocational Expert testified. (T. 35-58). On July 10, 2023, ALJ Greisler issued an unfavorable decision. (T. 126-138).

The Appeals Council reversed and remanded that decision. (T. 146-48). The Appeals Council determined that "[t]he hearing decision did not adequately consider [Rebecca C.'s] mental and cognitive impairments." (T. 146). Specifically, "the decision did not adequately consider whether [Rebecca C.] has an intellectual disability [("ID")] at

steps 2 and 3." (*Id.*). "[T]here was no[] discussion of ID at step 2, and the IQ testing and score were not discussed at step 3 in the paragraph "B" criteria, nor was Listing 12.05 considered (Findings 2 and 3)." (*Id.*). Thus, on remand, the Appeals Council directed ALJ Greisler to give "further consideration . . . to the severity of . . . [Rebecca C.'s] ID at steps 2 and 3." (*Id.*). The Appeals Councils also found that "[t]he hearing decision does not contain an adequate evaluation of opinion evidence in assessing [Rebecca C.'s] residual functional capacity." (T. 147).

After the case was remanded, ALJ Greisler held another hearing on September 18, 2024. (T. 59-80). Matthew Nutting again represented Rebecca C. and a Vocational Expert, Margaret Heck, also testified. (T. 59-80). On October 2, 2024, ALJ Greisler again issued an unfavorable decision. (T. 10-23). But this time, the Appeals Council denied Rebecca C.'s appeal. (T. 1-3). Rebecca C. timely appealed the agency's decision. (Dkt. 1).

## II.    GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, plaintiffs seeking disability insurance or supplemental security income benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months …" 42 U.S.C. § 1382c(a)(3)(A). In addition, plaintiffs'

> physical or mental impairment or impairments [must be] of s uch severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [they] live[], or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and supplemental security income disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant

4

has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience … Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920. Plaintiffs have the burden of establishing disability at the first four steps. *See Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). If they establish that their impairment prevents them from performing their past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

When reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Id.* at 417; *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42

5

U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* Yet this standard is a very deferential standard of review "— even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). But reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every

conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

The record includes Rebecca C.'s medical and mental health treatment records, which the parties are familiar with. The Court will refer to the pertinent records and the hearing testimony in its analysis of the parties' claims as appropriate.

## IV.  THE ALJ'S DECISION

At Step One of the five-step-sequential analysis, ALJ Greisler determined that Rebecca C. has "not engaged in substantial gainful activity since June 16, 2021, the application date." (T. 12) (cleaned up).

At Step Two, ALJ Greisler concluded that Rebecca C. has "the following severe impairments: obstructive sleep apnea, asthma, obesity, rheumatoid arthritis, fibromyalgia, early hip degenerative joint disease, right knee disorder (mild arthrosis), intellectual disorder, anxiety, and depression." (T. 12) (cleaned up). At the same step, ALJ Greisler found

Rebecca C.'s "hypertension, gastroesophageal reflux (GERD), and history of substance abuse" non-severe impairments. (T. 13.).

At Step Three, ALJ Greisler determined that Rebecca C. "does not have an impairment, or combination of impairments, that medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix. 1." (T. 13) (internal citations omitted).

Next, ALJ Greisler discussed the "paragraph B" criteria. (T. 15). "To satisfy the paragraph B criteria," mental impairments "must result in one extreme limitation or two marked limitations in a broad area of functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). Here, ALJ Greisler found that Rebecca C. did not meet the "Paragraph B" criteria because she determined that Rebecca C. had only moderate limitations in all four areas of mental functioning. (T. 15).

ALJ Greisler also considered the "paragraph C" criteria. (T. 15-16). The "paragraph C" criteria require a documented medical history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(c). Here, ALJ Greisler noted that the "paragraph C" criteria were not met. (T. 15-16.).

After this, ALJ Greisler determined that Rebecca C. had the residual function capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) except the claimant can stand and walk for up to a cumulative four hours in a workday. The claimant can occasionally stoop, balance, crouch, crawl, kneel and climb stairs and ramps, but cannot climb ladders, ropes or scaffolds or work at unprotected heights. The claimant can perform simple tasks at a consistent, goal-oriented pace, but not at a fast production rate pace such that would be experienced in assembly line type of work. The claimant can engage in occasional interaction with supervisors, coworkers and the public after learning job tasks from an informational or demonstrational lesson. The claimant can make simple decisions and tolerate occasional work changes. The claimant cannot tolerate concentrated exposure to respiratory irritants or extreme

heat. The claimant requires a five minute change in position after standing or walking for one hour but retains ability to remain on task.

(T. 16).

To make this finding, ALJ Greisler considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c." (*Id.*).

At Step Four, ALJ Greisler reasoned that Rebecca C. has no past relevant work, was within the "younger individual age 18-49, on the date the application was filed, but has since changed age categories to an individual closely approaching advanced age," and "has a limited education." (T. 29) (cleaned up).

Finally, at Step Five, ALJ Greisler concluded that "considering" Rebecca C.'s "age, education, work experience, and" RFC, Rebecca C. "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 23). Accordingly, ALJ Greisler determined that Rebecca C. is not disabled as defined by the Social Security Act. (*Id.*).

## V.    ISSUES IN CONTENTION

On appeal, Rebecca C. argues that ALJ Greisler erred by (1) not addressing her cane use in the RFC and; (2) not complying with the Appeals Council's remand order. (Pl. Br. at pgs. 7-17).[2] The Commissioner challenges both argument. (Def. Br. at pgs. 5-13).

## VI.    DISCUSSION

The Court recommends that the District Court reverse and remand ALJ Greisler's decision. In Section VI.A., the Court finds that ALJ Greisler did not consider Rebecca C.'s cane use in the RFC and that is error. In Section VI.B., the Court finds that ALJ Greisler did not comply with the Appeals Council's remand order.

### A. ALJ Greisler did not consider Rebecca C.'s cane use.

ALJ Greisler erred when she failed to consider Rebecca C.'s cane use. ALJs must consider a claimant's cane use in the RFC. But here, ALJ Greisler did not incorporate Rebecca C.'s cane use into the RFC. In consequence, the District Court should reverse and remand ALJ Greisler's decision.

---

[2] (Pl. Br.) refers to Plaintiffs Brief, Dkt. 15, and (Def. Br.) refers to Defendants Brief, Dkt. 23.

11

ALJs must consider a claimant's cane use in the RFC. "When use of a hand-held assistive device is medically required, the ALJ must consider its impact on the claimant's RFC. Failure to do so warrants remand." *Scott v. Berryhill*, No. 17-CV-00468, 2018 WL 4442882, at *5 (W.D.N.Y. Sept. 17, 2018). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . The adjudicator must always consider the particular facts of a case." SSR 96-9P, 1996 WL 374185.

ALJ Greisler did not incorporate Rebecca C.'s cane use into the RFC. In her decision, ALJ Greisler claimed that "the record fails to reflect a documented need for an assistive device[.]" (T. 13). But Jianghong Yu, M.D. prescribed Rebecca C. the cane she requested. (T. 1048-9). In fact, at the hearing, Rebecca C. confirmed that her doctor prescribed her a cane. (T. 66). But when performing her analysis, ALJ Greisler wrote that Rebbeca C. "*indicated* that she was prescribed a cane by her rheumatologist." (T. 17) (emphasis added). Rebecca C. did not *indicate,* and the record does not *indicate*, that a doctor prescribed

Rebecca C. a cane. The record *confirms* this fact. (T. 66, 1049). ALJ Greisler's failure to address the cane prescription is error. Frankly, "[t]he ALJ's mischaracterization of the record related to" Rebecca C.'s cane use "supports the conclusion that remand of this matter is required." *Rowe v. Berryhill*, No. 17-CV-00208, 2018 WL 4233702, at *4 (W.D.N.Y. Sept. 6, 2018); *see also Charles F. v. Comm'r of Soc. Sec.*, No. 19-CV-1664, 2021 WL 963585, at *4 (W.D.N.Y. Mar. 15, 2021) (reversing the ALJ's decision because the ALJ "neither used the medical records and opinions to evaluate whether Charles still needed a cane nor incorporated Charles's use of a cane into the RFC."). This error provides the District Court with an independent ground to reverse and remand ALJ Greisler's decision.

The Commissioner's arguments on appeal should fail. The Commissioner argues that ALJ Greisler considered the cane because she cited records that acknowledge Rebecca C. requested a cane and that Rebecca C. was prescribed a cane. (Def. Br. at pg. 12). The Commissioner also argues that Rebecca C.'s cane use was temporary (*Id.*). But those *post hoc* rationalizations, which the District Court cannot accept, are not enough. *See Snell v. Apfel,* 177 F.3d 128, 134 (2d

Cir. 1999) (noting that courts "may not accept ... *post hoc* rationalizations for agency action"). If ALJ Greisler "considered whether a cane was medically necessary and decided that it was not, [her] conclusion and reasoning are missing." *Charles F.*, 2021 WL 963585 at *4. And because ALJ Greisler "did not make an explicit finding about [Rebecca C.'s] use of a cane, this Court does not know whether [she] failed to consider the evidence about a cane; found that a cane was not medically necessary; found that a cane was medically necessary but did not impact [Rebecca C.'s] RFC; or reached some other conclusion." *Id.* As a result, the District Court should reject the Commissioner's arguments.

* * *

In the end, ALJ Greisler's failure to assess Rebecca C.'s cane use impacted the RFC analysis, and that error is not harmless. *See Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058 at *2 (W.D.N.Y. Sept. 6, 2018) (finding the ALJ's failure to incorporate the plaintiff's assistive device into the RFC not harmless). So for the reasons stated above—that ALJ Greisler failed to consider Rebecca C.'s cane use—this Court

14

recommends the District Court reverse and remand ALJ Greisler's decision.

## B. ALJ Greisler did not properly incorporate the Appeals Council's remand order in her second decision.

The District Court should reverse and remand ALJ Greisler's decision. ALJs are required to take any action that the Appeals Council orders. An ALJ's failure to comply with Appeals Council's remand order requires the District Court to reverse and remand the ALJ's decision. Here, viewing the Paragraph B analysis narrowly or expansively, the Court finds that ALJ Greisler ignored the Appeals Council's remand order. In consequence, the Court recommends the District Court reverse and remand ALJ Greisler's decision.

ALJs are "required to take any action that is ordered by the Appeals Council." *Tracy v. Colvin*, No. 15-CV-00980, 2017 WL 279556, at *2 (W.D.N.Y. Jan. 23, 2017)."Accordingly, an ALJ's failure to comply with the Appeals Council's order constitutes legal error and necessitates a remand." *Annemarie P. v. Dudek*, No. 23-CV-1415 (MJK), 2025 WL 814772, at *4 (N.D.N.Y. Mar. 13, 2025) (cleaned up).

The Appeals Council ordered ALJ Greisler to consider Rebecca C.'s IQ score in the Paragraph B analysis. When remanding ALJ

15

Greisler's original decision, the Appeals Council noted the following: "the [ALJ's] decision did not adequate[ly] consider whether [Rebecca C.] has an intellectual disability at steps 2 and 3. Specifically . . . the IQ testing and score were not discussed at step 3 *in the paragraph "B" criteria*, nor was Listing 12.05 considered (Findings 2 and 3)." (T. 146) (emphasis added). The Appeals Council continued: Rebecca C.'s full IQ test score of 64 "appear[s] to be reasonably valid" so "consideration should be given to relevant evidence in determining the degree to which medically determination impairments *affect the four areas of mental functioning*." (*Id.*) (emphasis added).

ALJ Greisler ignored the Appeals Council's remand order. Examining the Paragraph B analysis, this Court can find no evidence that ALJ Greisler considered Rebecca C.'s IQ scores. *See* (T. 15). To make that clear, the Court examines ALJ Greisler's Paragraph B analysis and finds that substantial evidence does not support her conclusions.

Dr. Shapiro found Rebecca C. "appears permanently disabled" and "her condition is not expected to improve, and" she "is unable to participate in any activities." (T. 861). Coming to this conclusion, Dr.

16

Shapiro noted that Rebecca C. is very limited in her abilities to perform complex tasks independently, regularly attend to a routine and maintain a schedule, and use public transportation, and is moderately limited in maintaining attention and concentration for roles and tasks. (T. 860). In this context, very limited means "unable to function 75% or more of the time" and moderately limited means "unable to function 50% of the time." (*Id.*). Dr. Shapiro also noted that Rebecca C. has difficulty adequately communicating with others, her community skills are impaired, she is lacking self-direction, her academic skills are impaired, and her home living, leisure, and work skills are impaired. (T. 859).

Taking a narrow approach—*i.e.* Rebecca C.'s scores themselves and the conclusion from those scores needed to be included in the Paragraph B analysis—the Court finds that ALJ Greisler did not discuss Rebecca C.'s IQ scores. ALJ Greisler, seeming to either not account for or discount the IQ scores, noted that Rebecca C.'s "mental status examinations throughout the record note normal memory," Rebecca C. "had been described as cooperative through the record," she "testified that she is able to read and do everyday math," and her

"mental status examination throughout the record show normal mood, normal insight, normal judgment, and no suicidal ideations." (T. 15) (cleaned up). But Rebecca C.'s Verbal Compression Index (70), Perceptual Reasoning Index (71), Working Memory Index (63), Processing Speed Index (74), Skills Domain Score (69), Daily Living Skills Score (60), Socialization Skill Score (65), and Adapative Behavior Composite Score (65), and Full-Scale IQ (64), indicate significant cognitive limitation. *See* (T. 859); *see also Atkins v. Virginia*, 536 U.S. 304, 309 fn. 5 (2002) (". . . an IQ between 70 and 75 or lower, which is typically considered the cutoff IQ score for the intellectual function prong of the mental retardation definition."); *accord Lard v. Saul*, No. 19-CV-1829, 2020 WL 6827901, at *10 (N.D. Ala. Nov. 20, 2020) ("the claimant's score of 65 on this IQ test strengthens other evidence in the record that the claimant's IQ score is in the disabled range, including a 2003 test on which the claimant scored a full-scale IQ of 63."). Neither the test scores nor any conclusion that can be drawn from those test scores are included in ALJ Greisler's Paragraph B analysis.

Taking a broader view—*i.e.* ALJ Greisler included the IQ scores in her Paragraph B analysis by referencing Dr. Shapiro's notes—the Court

18

finds that ALJ Greisler improperly engaged in opinion substitution. "[I]t is impermissible for an ALJ to interpret[] raw medical data and substitute [their] own opinion for that of a medical source. . .." *Heaman v. Comm'r of Soc. Sec.*, No. 16-CV-1459 (TWD), 2018 WL 11468023, at *9 (N.D.N.Y. Mar. 20, 2018). ALJs, however, are allowed to resolve conflicts in the medical record. *Id.* But here, ALJ Greisler is not resolving conflicts in the medical record. She is determining that Dr. Shapiro's IQ test findings are not disabling because Rebecca C. can do everyday math, is cordial when meeting her doctors, and has normal mental status examines. (T. 15). But none of these findings negate Rebecca C.'s IQ test scores. To start, "[t]he fact that [Rebecca C.] was described as pleasant and cooperative . . . does not negate the severity of her mental impairments . . .." *Callahan v. Berryhill*, No. 17-CV-06245, 2018 WL 1616058, at *5 (W.D.N.Y. Apr. 4, 2018). Next, an individual can have disabling IQ scores and normal mental status exams. *See, e.g., Meadows v. Colvin*, No. CV 14-28563, 2016 WL 829170, at *5 (S.D.W. Va. Feb. 8, 2016), *report and recommendation adopted*, No. 14-CV-28563, 2016 WL 830058 (S.D.W. Va. Mar. 3, 2016) (reversing and remanding the ALJ's decision where the "[c]laimant had a normal

19

mental status exam" and their "[i]ntellectual assessment revealed a full[-]scale IQ score of 69 and reading, spelling, and math abilities at a third, second, and fifth grade level respectively."); *Lard v. Saul*, 2020 WL 6827901, at *3-4, 11 (reversing the ALJ's decision where the claimant had a full-scale IQ score of 72 but was described as cooperative, normal and stable). Taking ALJ Greisler's logic to its furthest conclusion, an individual with a full-scale IQ score under 70 cannot be disabled unless they are either suicidal, homicidal, or hallucinating. *See, e.g.,* (T. 597) (mental status exams examine, among other things, if the claimant has suicidal ideation, homicidal ideation, and hallucinations). That cannot be so. Finally, the term "everyday math" is undefined. So Rebecca C.'s testimony that she can perform "everyday math" says nothing about what she can actually do. At bottom, ALJ Greisler impermissibly engaged in opinion substitution when performing the Paragraph B analysis. That was error.

\* \* \*

All in all, ALJ Greisler did not comply with the Appeals Council's remand order. Failure to comply with the Appeals Council's remand order is error and requires remand. Here, the Appeals Council ordered

20

ALJ Greisler to consider Rebecca C.'s test scores. Taking either a narrow or broad view, the Court finds that ALJ Greisler failed to comply with the Appeals Council's remand order. So this Court recommends the District Court reverse and remand ALJ Greisler's decision.

## VII   CONCLUSION

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the District Court **GRANT** Rebecca C.'s motion for judgment on the pleadings (Dkt. 15) because ALJ Greisler did not consider Rebecca C.'s cane use, and it is further

**RECOMMENDED**, that the District Court **GRANT** Rebecca C.'s motion for judgment on the pleadings (Dkt. 15) because ALJ Greisler did not comply with the Appeals Council remand order, and it is further

**RECOMMENDED**, that the District Court **DENY** the Commissioner's motion for judgment on the pleadings (Dkt. 23), and it is further

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and **REMANDED**.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 8, 2026

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

22